Studebaker Sales Co. of Pgh. *v.* Nehaus, Appellant.

Argued April 24, 1931.

Before TREXLER, P. J., KELLER, GAWTHROP, CUNNINGHAM, BALDRIGE and DREW, JJ.

*William H. Eckert,* and with him *Smith, Buchanan, Scott & Gordon,* for appellant.

*W. A. Walker,* and with him *Wright and Rundle,* for appellee.

OPINION BY CUNNINGHAM, J., July 8, 1931:

This appeal is by the intervening defendant, a landlord, from a judgment in an action of replevin in favor of the plaintiff therein, the alleged owner of an automobile upon which a distress for rent in arrear had been levied by appellant. The landlord stored the car in the garage of Nehaus, the original defendant in the present action; the claimant, Studebaker Sales Company, issued a writ of replevin for it, under which the sheriff served Nehaus and, in the absence of a counter bond, delivered the car to the claimant; upon his petition, the landlord was permitted to intervene as a party defendant. After the usual pleadings, the parties stated a case for the opinion of the court below, in which it was stipulated that judgment should be entered for John Kanuch, the landlord, in the sum of $450 (the balance of rent due him), with interest, if the court should conclude that he "had the right to levy a distraint upon [the] automobile at the time when he did so,......but if not, then judgment to be entered for the plaintiff, the Studebaker Sales Company of Pittsburgh, or such other judgment......as to the court shall seem meet and proper."

Material facts thus appearing are these: George E. Bailey at the time of his death June 12, 1929, was in possession, under a lease in writing, of a house and lot in Ingram, Allegheny County, owned by Kanuch, and rent therefor was due and owing. In a garage on

the premises was an automobile, the chattel now in controversy. It had been obtained by Bailey from the Studebaker Sales Company under a bailment lease dated May 12, 1928. The "total cash rental price" was $1,617; after certain "trade in" adjustments and cash payments, the "total deferred rental payments" were $1,228.96, payable in instalments—$76.81, June 12, 1928, and the balance in fifteen "equal successive monthly instalments" of $76.81. The landlord, through his bailiff, seized the car seven days after the death of the lessee; at that time the balance due the lessor under the lease was $369.05; when the car was re-plevied July 5, 1929, by the Studebaker Company its value was set at $900. By the lease it was provided, inter alia, that the instalments of rental were also to be evidenced by a promissory note from the lessee to the lessor, incorporated, by reference thereto, in the lease; that the car should remain the property of the company but, upon its surrender to lessor at the end of the term, the lessee might, "at his option, purchase said motor vehicle for one dollar, providing lessee has fully paid the said note and performed all conditions of this lease;" and that the contract should "apply to, inure to the benefit of and bind the heirs, executors, administrators, successors and assigns of lessee and lessor." The Studebaker Company did not during the lifetime of the lessee exercise the right retained in it to take possession of the car by reason of the failure by the lessee "to comply with the terms" of the bailment.

An examination of the opinion of the court below indicates that it sought to justify its judgment permitting the bailor to retain the car along these lines. If Bailey, the tenant of the premises and bailee of the car, had been living at the time of the distress the car would have been subject thereto and could have been sold by the landlord as no special statute exempts

bailed automobiles from distress. But the goods of a tenant are, after his death, subject to the orderly distribution of his estate in the orphans' court and a landlord therefore may not distrain upon chattels on the premises which belonged to the tenant in his lifetime. After noting the fact that Bailey was in default under the terms of the lease and stating the contention of the landlord that the car did not belong to his tenant, the opinion continues: "If it is conceded, and it is, that after the tenant's death a landlord's warrant could not properly issue as to the tenant's property, how can it be held that it would apply to other property upon a tenant's premises? At the tenant's death, the personal relationship existing between the landlord and the tenant had ceased and terminated. It is, therefore, to be presumed that the property upon the tenant's premises was then in the custody of the law. His estate succeeded him as a party. If the relationship of landlord and tenant was thereupon terminated, the landlord's warrant issued after his death, in our opinion, was a nullity and of no legal effect...... It is our conclusion that the landlord's warrant issued in this case as against the deceased tenant was a nullity and without any legal force and effect in the premises and no authority has been called to our attention which would justify a conclusion to the contrary." Judgment was then entered for the plaintiff. We do not assent to all the reasoning in this quotation; there may be cases, of which Mickle's Admr. v. Miles, 1 Grant 320, is an example, in which a landlord has the right to distrain upon the goods found upon demised premises after the death of the tenant. Nor need this case turn upon presumptions; its exact facts are ascertainable.

The trouble with the judgment is that instead of really treating Bailey's interest in the car as having passed to his estate it gives back to the Studebaker

Company a car upon which Bailey had paid more than seventy-five per cent. of the rentals provided for in the lease and upon which the company had given Bailey, or his personal representatives, an option for its purchase upon payment of the rentals and the additional sum of one dollar. A judgment which results in such manifest injustice to Bailey's estate should not be affirmed. No consideration seems to have been given to the fact that the value of the bailor's ownership in the car was then comparatively small: General Motors Acceptance Corp. v. B. & O. Railroad, 97 Pa. Superior Ct. 93. Counsel for the landlord admit that the goods of a deceased tenant may not be distrained, but contend that as the proceeding is in rem for the benefit of the landlord there is no legal objection to distraining upon the goods of a third party found upon the demised premises after the death of the tenant, and argue that this car was the chattel of a stranger in which the estate of the tenant had no interest.

It is stated repeatedly throughout their brief that the issuing of the writ of replevin by the Studebaker Company was the exercise of its right under the lease to repossess the car for default in payments of rental and had the effect of "eliminating, ipso facto, every vestige of right of Bailey's estate to the legal or equitable title or to the possession of the automobile." We cannot agree with this assertion; the rights of all the parties—landlord, bailor and the estate of the bailee—are to be considered fixed as of the date of Bailey's death; the bailor took no action until after the distress had been levied and neither it nor the landlord will be heard to say that any rights of Bailey's estate in the car or to its possession by his personal representatives for administration as a part of his estate were affected by the issuing of the replevin.

Nor can the contention—that this case falls within the exception to the rule against permitting a distress upon goods of a deceased tenant—be sustained. The case of Mickle's Administrator v. Miles, supra, relied upon by counsel for appellant, is not applicable to the facts in this case. It was an action by the administrator of a tenant against the landlord for damages for an alleged illegal distraint for rent. Mickle, the deceased tenant, had sublet a part of the real estate and personal property in question to Northrop who was in possession thereof at the time of Mickle's death. The trial judge charged that for the rent due at the time of Mickle's death the landlord had a right to distrain the personal property in the possession of Northrop. The Supreme Court, in affirming upon this point, said (p. 328): "It is agreed that the goods of a deceased lessee are not liable to distress; but the goods seem to us to have belonged to Northrop, the assignee of the term for the part of the land where they were seized, because it does not appear to us that they had been delivered to the lessee's administrator." But that is not the situation here. The deceased tenant had paid more than seventy-five per cent. of the rentals and under the express terms of the bailment his executors or administrators, as the case may be, had the right to pay the bailor the $369 still due and exercise the option to purchase the car.

The fundamental difficulty with this case is that Bailey's personal representatives have not been made parties to the proceedings. The landlord and bailor have attempted to determine interests in, and the right of possession of, a car in which the estate of the deceased bailee has a substantial interest without making his estate a party. It does not appear in the case stated whether Bailey died testate or intestate, whether administration has been raised on his estate, and, if so, whether his personal representatives have

elected to pay the rentals in default and exercise their option to purchase the car or have waived their rights under the lease. Another material inquiry is whether Bailey's interest in the car has been included in the inventory of his estate. Such facts, when ascertained and considered in connection with the circumstance that the car was in Bailey's possession at the time of his death, may have a decided bearing upon the question whether the jurisdiction over this controversy is in the common pleas or the orphans' court: Blaszcak's Estate, 90 Pa. Superior Ct. 589, and cases there cited.

In our opinion a proper judgment cannot be entered on this record by reason of the absence therefrom of a necessary party and because the case stated does not contain all the essential facts.

The judgment in favor of the plaintiff is reversed and the record is remitted for further proceedings not inconsistent with this opinion.